STATE OF NORTH CAROLINA, EX REL. UTILITIES COMMISSION, MEDFIELD-KINGSBROOK HOMEOWNERS' ASSOCIATION, HIDDEN VALLEY CIVIC ACTION GROUP WATER COMMITTEE, DEVELOPMENT ASSOCIATES, INC., AND JOHN E. ALDRIDGE, JR. v. HEATER UTILITIES, INC., APPLICANT

No. 7510UC283

(Filed 2 July 1975)

1. **Utilities Commission § 6— water rates — rate base — exclusion of contributed plant**

   The Utilities Commission was not required by G.S. 62-133(b)(1) to include contributed plant in a water utility's fair value rate base, and the exclusion of contributed plant did not constitute a taking of the utility's property without just compensation.

2. **Utilities Commission § 6— water rates — operating expenses — depreciation on contributed plant**

   A water utility was not entitled under G.S. 62-133(b)(1) to have depreciation expense on contributed plant considered as an operating expense for ratemaking purposes.

Utilities Comm. v. Utilities, Inc.

APPEAL by applicant from order of North Carolina Utilities Commission entered 12 December 1974. Heard in the Court of Appeals 10 June 1975.

Heater Utilities, Inc., instituted this proceeding on 24 October 1973 by filing an application with the North Carolina Utilities Commission for approval of revised rates for water utility service in eleven service areas. On 21 November 1973 the Commission declared the application to be a general rate case and suspended the proposed rates. On 30 November 1973 Heater filed an amendment to its application, adding nine newly-licensed service areas, and substituting new rate schedules. By order dated 10 December 1973 the Commission allowed the amendment and scheduled the application for public hearing on 12 February 1974.

Interventions were filed by the Medfield-Kingsbrook Homeowners' Association, the Hidden Valley Civic Action Group Water Committee through Attorney William Anderson, Attorney John E. Aldridge, Jr., for himself, and Development Associates, Inc., through Attorney H. Arthur Sandman. The Commission allowed the interventions, and Attorney Anderson moved for continuance. Public hearing was rescheduled for 2 July 1974 after due notice to the public.

When the matter came on for hearing, Heater elected to have the rates set pursuant to G.S. 62-133(b) using the traditional rate base method. Evidence was presented by Heater, a customer, and the Commission. On 12 December 1974 the Commission filed its order, which included the following findings of fact:

(1) Rates should be fixed on the basis of operating results for the seven dominant systems which were in operation during the test year. The thirteen other systems, which were operated at far less than capacity, should be excluded for the purpose of fixing rates in this case.

(2) The reasonable original cost of the applicant's utility plant serving the seven dominant systems is $579,045, and the depreciation reserve is $38,370, resulting in a net depreciated original cost of utility plant of $540,675.

(3) No reliable evidence exists in the record as to reasonable replacement cost of the utility plant serving the seven dominant systems. Therefore, the Commission must

determine the fair value of the systems based upon the net depreciated original cost as adjusted to account for other factors set forth below.

(4) The fair value of the seven systems is $124,472 consisting of the net depreciated original cost of the plant of $540,675 plus a reasonable allowance for working capital of $1,552 less contributions in aid of construction of $417,755 which is composed of recorded contributions of $175,591 and additional contributions of $242,164 classified by the applicant as an "acquisition adjustment."

(5) The annualized gross revenues for the test year are $63,510 under present rates and $156,942 under rates proposed by applicant.

(6) The annualized level of operating expenses is $64,946, which includes $7,063 for actual investment currently consumed through actual depreciation.

(7) The proper rate of return which applicant should have the opportunity to earn on the fair value of its property used and useful in rendering utility service in North Carolina is 11%.

(8) The gross revenues required to produce the 11% rate of return are $82,732.

In its order the Commission approved a schedule of rates that would produce gross revenues of $82,732 and an 11% rate of return on the fair value of Heater's property. Heater Utilities, Inc., appealed to this Court.

*North Carolina Utilities Commission, by Commission Attorney Edward B. Hipp, Assistant Commission Attorney Robert F. Page, and Associate Commission Attorney Lee West Movius.*

*Weaver, Noland & Anderson, by William Anderson, for intervenor appellees Medfield-Kingsbrook Homeowners' Association and Hidden Valley Civic Action Group Water Committee.*

*Parker, Sink & Powers, by Henry H. Sink, for applicant appellant.*

ARNOLD, Judge.

By this appeal, applicant Heater Utilities, Inc., presents two related questions for review:

(1) Whether the Utilities Commission is required, under G.S. 62-133 (b) (1) and the state and federal constitutions,

to include contributed plant in applicant's fair value rate base; and

(2) Whether the applicant is entitled, under G.S. 62-133 (b) (3) to have depreciation expense on contributed plant treated as an operating expense for ratemaking purposes.

G.S. 62-133 (b) (1) provides that in fixing rates the Commission shall:

"Ascertain the fair value of the public utility's property used and useful in providing the service rendered to the public within this State, considering the reasonable original cost of the property less that portion of the cost which has been consumed by previous use recovered by depreciation expense, the replacement cost of the property, and any other factors relevant to the present fair value of the property. Replacement cost may be determined by trending such reasonable depreciated cost to current cost levels, or by any other reasonable method."

Heater contends that all of its "property used and useful" should be included in the rate base regardless of whether it was paid for by the utility or acquired by donation. We note that Heater does not object to the Commission's conclusion that $175,591 recorded as "contributions in aid of construction" (amounts paid directly by the customers to the utility) should be deducted in determining the fair value rate base. Heater objects only to the deduction of $242,164 recorded as "acquisition adjustment" representing the difference between depreciated original cost and purchase price of certain property. The Commission concluded that amounts recorded in the "acquisition adjustment" account should be treated as "contributions in aid of construction," since they also represented property provided by the customers, although indirectly, and did not represent actual investment by the utility or actual cost to it.

Although case law in other jurisdictions offers some support for the proposition that the source of a utility's property is not determinative of fair value, when that source is the very customers who will pay the rates based thereon, courts have deemed it inequitable to include such property in the rate base. *See DuPage Utility Co. v. Commerce Com.*, 47 Ill. 2d 550, 267 N.E. 2d 662, *cert. denied* 404 U.S. 832 (1971); *Mississippi Public Serv. Com'n v. Hinds County W. Co.*, 195 So. 2d 71 (Miss. 1967); *Utilities Corp. v. Commonwealth*, 211 Va. 620, 179 S.E.

2d 714 (1971) ; *cf. City of Covington v. Public Service Com.,* 313 S.W. 2d 391 (Ky. App. 1958).

In a recent North Carolina case, our state Supreme Court affirmed the Utilities Commission's deduction of customer-supplied monies from the allowance for working capital, a component of the fair value rate base. *Utilities Comm. v. Power Co.,* 285 N.C. 398, 206 S.E. 2d 283 (1974). *See also Utilities Comm. v. Morgan, Attorney General,* 277 N.C. 255, 177 S.E. 2d 405 (1970). The rationale behind these and the above cited cases we believe is apposite to the case at bar.

[1] The fact that Heater's "acquisition adjustment" account represented a cost of plant borne by customers at time of construction and never by investors is one of the "other factors relevant to the present fair value of the property" under G.S. 62-133(b)(1). We hold that the Commission is not required by statute to include contributed plant in applicant's fair value rate base.

Nor is the inclusion constitutionally required. As a public utility, Heater has submitted to the regulatory authority of the State in return for State sanction of its monopoly position. Heater's stockholders are entitled to no more than a reasonable return on their investment. *See generally Utilities Com. v. State* and *Utilities Com. v. Telegraph Co.,* 239 N.C. 333, 80 S.E. 2d 133 (1954). The Commission's refusal to allow them a return on property in which they have not invested, and to force the customers who are the real investors to pay twice, does not constitute a taking without just compensation.

G.S. 62-133(b)(3) provides that the Commission shall:

"Ascertain such public utility's reasonable operating expenses, including actual investment currently consumed through reasonable actual depreciation."

[2] Heater contends that the Commission should include depreciation on contributed plant as part of operating expenses. The Commission concluded that the applicant is not entitled to depreciation on property in which it has no investment. There is case law supporting Heater's contention. *See, e.g., DuPage Utility Co. v. Commerce Com., supra; cf. Utilities Corp. v. Commonwealth, supra. But see Utilities Com. v. State* and *Utilities Com. v. Telegraph Co., supra,* at 346, 80 S.E. 2d at 142, in which our Supreme Court discusses depreciation deductions.

Mitchell v. K. W. D. S., Inc.

The Commission's conclusion, however, seems to be compelled by the language of the statute, which limits depreciation to "actual investment" and which we are powerless to amend.

For the reasons stated, the order appealed from is

Affirmed.

Chief Judge BROCK and Judge PARKER concur.